UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MELISSA JAENICHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:25-cv-00486-ALT |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, *sued as Frank Bisignano*, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Melissa Jaenichen appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application under the Social

Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").

(ECF 1). Because neither of Jaenichen's two arguments in pursuit of a remand is persuasive, the

Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Jaenichen applied for DIB in May 2022, alleging disability as of December 1, 2021.

(ECF 9 Administrative Record ("AR") 15, 203-06).[1] Jaenichen's claim was denied initially and

upon reconsideration. (AR 15, 81-98). On May 16, 2024, administrative law judge ("ALJ")

William Pierson conducted an administrative hearing, at which Jaenichen, who was represented

by counsel, and a vocational expert ("VE") testified. (AR 46-80). On July 24, 2024, the ALJ

rendered an unfavorable decision to Jaenichen, concluding that she was not disabled because she

could perform a significant number of unskilled jobs in the national economy despite the

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

limitations caused by her impairments. (AR 15-31). The Appeals Council denied Jaenichen's

request for review (AR 6-10), and the ALJ's decision became the final decision of the

Commissioner. *See* 20 C.F.R. § 404.981.

On September 12, 2025, Jaenichen filed a complaint in this Court appealing the

Commissioner's final decision. (ECF 1). Jaenichen argues that the ALJ erred by: (1) finding

persuasive a statement by Sean Goddard, APRN, that the regulations deem neither valuable nor

persuasive; and (2) failing to account for her moderate limitations in maintaining concentration,

persistence, or pace in the mental residual functional capacity (RFC). (ECF 14 at 12).

On the date of the Commissioner's final decision, Jaenichen was fifty-three years old

(AR 51, 203), had attended two years of college (AR 265), and had past work as a general duty

nurse, dialysis technician, hospice nurse, and nurse/hospital clerk/hospital scheduler (AR 29, 76).

In her application, Jaenichen alleged that she is disabled due to hypertension, generalized anxiety

disorder, and major depressive disorder. (AR 264).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner … , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

(citation omitted). The decision will be reversed "only if [it is] not supported by substantial

evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d

863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

3

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. § 404.1520. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant' maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

In the Commissioner's final decision, the ALJ found as a threshold matter that Jaenichen was insured for DIB through December 31, 2027. (AR 17). At step one of the five-step sequential analysis, the ALJ found that Jaenichen had engaged in substantial gainful activity (SGA) from May 1, 2022, to July 1, 2022, and thus was not disabled during this period. (AR 18). The ALJ further found that there had been a continuous twelve-month period during which Jaenichen did not engage in SGA, and thus, he proceeded to step two. (*Id.*). At step two, the ALJ found that Jaenichen's major depressive disorder, generalized anxiety disorder, and attention deficit disorder were severe impairments. (*Id.*). At step three, the ALJ concluded that Jaenichen did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

The ALJ assigned Jaenichen the following RFC:

the claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple, routine and repetitive tasks. The claimant can make the decisions and cope with the stress associated with such tasks. The claimant can have frequent interactions with coworkers, supervisors and the public.

(AR 19-20). The ALJ determined at step four that given the assigned RFC, Jaenichen could not perform any past relevant work. (AR 29). At step five, the ALJ found a hypothetical individual of Jaenichen's age, education, experience, and assigned RFC could perform a significant number of unskilled jobs at all exertional levels in the national economy, including general kitchen helper, patient transporter, and cleaner. (ECF 30). Accordingly, Jaenichen's application for DIB was denied. (*Id.*).

### *C. Nurse Goddard's Statement*

Jaenichen first argues that the ALJ erred by finding "persuasive" a statement made by Nurse Goddard in a treatment note dated January 15, 2024, that the regulations deem neither valuable nor persuasive. (ECF 14 at 12). Goddard's note states in relevant part:

1. Mental Health Status: Pt presents with stable mental health condition. No significant changes in [symptoms] or treatment plan. Pt has been adhering to current medication regimen and recently started therapy. No new mental health diagnoses identified during the visit.

2. Disability Assessment: Pt seeking disability based on mental health condition. However, provider notes that current level of treatment and pt's mental health status do not meet criteria for full disability. Pt is encouraged to continue with consistent and persistent treatment.… Provider could complete psychological evaluation for disability application, but anticipates it may not meet criteria for full disability. Recommended pt to maintain consistent and persistent treatment, exploring all modalities to demonstrate active engagement in treatment.

(AR 1233). When considering Goddard's records, the ALJ penned the following paragraph:

At Viking, Sean Goddard, in June 2023, noted there are complaints but there was a normal mental status exam with generalized anxiety disorder and recurrent severe major depressive disorder. Goddard's notes also generally reflect discussions, and few clinical findings, and certainly few clinical findings

5

supporting the claimant. These notes largely reflect complaints. The notes reflect TMS therapy is given (19F). The content of the notes reflect treatment provided but fail to support allegations for greater limitations of function. In fact, Goddard noted, on January 21, 2024, that "Pt applying for disability based on mental health. Provider could complete the psychological evaluation for disability application, but anticipates it may not meet criteria for full disability." (19F/17, 120). These facts reflect findings that do not support allegations for great limitations of function. In that Goddard felt she did not have disabling conditions is persuasive and consistent with the record.

(AR 26).

Jaenichen argues that ALJ violated 20 C.F.R. § 404.1520b by finding Goddard's statement persuasive, as the remark about whether Jaenichen "may not meet criteria for full disability" is an opinion on the ultimate issue of disability reserved to the Commissioner. (ECF 14 at 12); *see* 20 C.F.R. § 404.1520b(c). [2] Indeed, "the ultimate determination of disability is reserved of the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations." *Albert v. Kijakazi*, 34 F.4th 611, 616 (7th Cir. 2022) (citation omitted). The regulations treat such statements as "inherently neither valuable nor persuasive to the issue of whether [the claimant] is disabled … under the Act[.]" 20 C.F.R. § 404.1520b(c). As Jaenichen persuasively argues, the ALJ "cannot treat such statements as irrelevant when they favor the claimant, yet credit them as persuasive evidence when they cut the other way." (ECF 14 at 13). The Court agrees it is quite clear that the ALJ erred when finding "persuasive" Nurse Goddard's statement that Jaenichen did not meet the criteria for full disability.

The analysis, however, does not end there. The Court must further determine whether the

---

[2] Jaenichen also argues that the ALJ overstated what Nurse Goddard actually said in his January 15, 2024, note. (ECF 14 at 12-13). Jaenichen asserts: "Goddard did not opine that Plaintiff 'did not have disabling conditions.' He stated only that he 'anticipates' a disability evaluation 'may not meet criteria for full disability.'" (*Id.* at 12 (quoting AR 26, 1233)). But Jaenichen is merely splitting hairs in advancing this argument. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (discarding the plaintiff's argument that the ALJ mischaracterized the plaintiff's testimony, describing it as "nothing more than a dislike of the ALJ's phraseology").

ALJ's error was harmless. "Harmless error only exists if a court can state with great confidence that the ALJ would reach the same result on remand." *Mangan v. Colvin*, No. 12 C 7203, 2014 WL 4257496, at *2 (N.D. Ill. Aug. 28, 2014) (citation omitted); *see Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.").

Jaenichen argues that the ALJ's error assessing Goddard's statement is not harmless. Jaenichen points out that a medical source opinion by Kelly Robinson, NP, co-signed by Ryan Singerman, D.O., supported disabling mental limitations, but the ALJ found that opinion unpersuasive given that Jaenichen admitted their limitations represented her own subjective responses. (AR 26-28, 69-71, 1103-07). The ALJ instead credited the opinions of the state agency psychologists, Stacia L. Hill, Ph.D., and William A. Shipley, Ph.D., who concluded that Jaenichen could "understand, carry out and remember simple instructions; … make judgments commensurate with functions of simple, repetitive tasks; … respond appropriately to brief supervision and interactions with coworkers and work situations; [and] … deal with changes in a routine work setting." (AR 86-87, 96-97).[3] Jaenichen suggests Nurse Goddard's statement is a "tie-breaker" between the two differing medical source statements and argues that "the Court cannot say with great confidence that the ALJ would have reached the same result absent the ALJ's improper, tie-breaking reliance on Goddard's statement." (ECF 14 at 14).

But Jaenichen's characterization of Goddard's statement as a "tie-breaker" ignores the

---

[3] The ALJ did, however, discount Dr. Hill's and Dr. Shipley's limitation to "brief supervisions and interactions with coworkers and work situations", considering it "not defined and not persuasive and also not well supported by the record … which generally reflects alert demeanor, orientation times three, normal speech, normal behavior, cooperative behavior, normal thought content, normal memory, normal cognition, normal judgment, normal attention, normal perception, normal mood and normal affect." (AR 27).

ALJ's review of the entirety of Goddard's opinion. When discussing the opinion, the ALJ noted there were "complaints but … a normal mental status exam" and "certainly few clinical findings supporting the claimant." (AR 26). The ALJ correctly summarized: "The content of the [Goddard's] notes reflect treatment provided but fail to support allegations for greater limitations of function." (*Id.*). As such, Nurse Goddard's opinion is not favorable to Jaenichen's cause even if the ALJ were to disregard Goddard's statement addressing an issue reserved to the Commissioner.

Given the record and the entirety of Goddard's opinion, the Court can predict with great confidence that the Commissioner would still deny Jaenichen disability on remand, and thus, remanding solely to remedy the ALJ's error pertaining to Goddard's statement would be "a waste of time." *Spiva*, 628 F.3d at 353. "No principal of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different decision." *Ponton v. Comm'r of Soc. Sec.*, No. 08-2159, 2009 WL 2413927, at *5 (C.D. Ill. Aug. 4, 2009) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). Consequently, Jaenichen's first argument challenging the ALJ's consideration of Goddard's statement, though technically correct, amounts to harmless error and does not warrant a remand of the Commissioner's final decision.

### D. Concentration, Persistence, or Pace

In her second argument, Jaenichen asserts that the ALJ failed to adequately account for her moderate limitations in concentration, persistence, or pace when assigning the mental RFC. (ECF 14 at 15-18). As recited earlier, the ALJ limited Jaenichen in the mental RFC as follows: "The claimant is limited to simple, routine and repetitive tasks. The claimant can make decisions and cope with the stress associated with such tasks … [and] have frequent interactions with

coworkers, supervisors and the public." (AR at 19-20).

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). "The ALJ need not use any 'magic words' in formulating a person's … RFC. But an 'RFC assessment must incorporate all of the claimant's limitations supported by the medical record, including even moderate limitations in concentration, persistence, or pace.'" *Lothridge v. Saul*, 984 F.3d 1227, 1233 (citation omitted).

The Seventh Circuit Court of Appeals has "made clear that in most cases employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th 2019) (citations and internal quotation marks omitted); *see Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[W]e have … underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace. More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." (citation and internal quotation marks omitted)). The Seventh Circuit, however, has clarified that there is no "categorical rule to the effect that an ALJ may never accommodate 'moderate' limitations in concentration, persistence, and pace with only a

restriction to simple instructions and tasks." *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021).

In *Pavlicek v. Saul*, the Seventh Circuit assessed whether the ALJ reasonably relied on a narrative RFC penned by the state agency doctors that the claimant could perform at a consistent pace if engaged in simple, repetitive tasks, in contrast to their "moderate" checklist ratings. 994 F.3d 777, 783 (7th Cir. 2021). The Seventh Circuit noted that "[a] 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.'" *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1). From there, the Court reasoned: "'[F]air' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.* The Seventh Circuit concluded that the ALJ reasonably relied on a medical source opinion that "encapsulated and translated" the claimant's moderate limitations in concentration, persistence, or pace to an RFC for simple work and affirmed the ALJ's decision. *Id*. (citation and brackets omitted); *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[A]n ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." (citation omitted)).

Here, too, the ALJ relied on medical opinions that translated Jaenichen's moderate limitations in concentration, persistence, or pace to an RFC generally consistent with that assigned by the ALJ. The state agency psychologists, Dr. Hill and Dr. Shipley, reviewed Jaenichen's record in June and November 2023, respectively, and found in the check-box section that Jaenichen was moderately limited in maintaining attention and concentration for extended periods, but ultimately concluded in their narrative section that she could still "understand, carry out and remember simple instructions; … make judgments commensurate with functions of

simple, repetitive tasks; … respond appropriately to brief supervision and interactions with coworkers and work situations; [and] … deal with changes in a routine work setting." (AR 86-87, 96-97); *see Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015)3471, at *4 (Mar. 29, 2023) (finding that the state agency doctor's narrative RFC adequately encapsulated and translated the claimant's moderate limitations in concentration, persistence, or pace from the worksheet section, commenting that "[a] moderate limitation is not a complete impairment" (citation omitted)). As already explained, the ALJ found Dr. Hill's and Dr. Shipley's opinions "generally persuasive" with the exception of their "brief supervision and interactions" limitation. (AR 27).

Ultimately, whether an ALJ has adequately accounted for moderate limitations in concentration, persistence, or pace must be assessed on a case-by-case basis. *See Johnson v. O'Malley*, No. 4:23-CV-39-GSL, 2024 WL 1327338, at *6 (N.D. Ind. Mar. 27, 2024) ("[C]learly, where the ALJ connects the assessed limitations to evidence supporting those limitations, even vague or generic restrictions to simple work is sufficient."). Here, the ALJ relied on Dr. Hill's and Dr. Shipley's opinions when concluding in the RFC that Jaenichen could carry out "simple, routine and repetitive tasks" despite her moderate limitations in concentration, persistence, or pace. (AR 27); *see Johansen v. Barnhart*, 314 F.3rd 283, 289 (7th Cir. 2002) ("Dr. Matkom … found that Johansen was essentially 'moderately limited' in his ability to maintain a regular schedule and attendance, and in his ability to complete a normal workday without interruptions from psychologically-based symptoms. Dr. Matkom, however, went further and translated those findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work."); *see also Peeters v. Saul*, 975 F.3d 639, 642 (7th Cir. 2020).

On a final note, the ALJ further reasoned that Jaenichen "used a computer and drive[s] a

11

car, which undoubtedly requires … sustained concentration and multi-step decision making, which suggest a greater functional capability that she alleged." (AR 21; *see also* AR 22). The ALJ additionally noted that Jaenichen reported in 2023 she was "caring for her grandchildren in place of working" (AR 21; *see also* AR 24); that Jaenichen's mental status improved with treatment (AR 24-25); and that her depression and anxiety were "[c]ontrolled with [her] current medication regimen" (AR 24). (*See* AR 21 ("Due to her improvement, the claimant reported she was caring for her grandchildren in place of working.")).

Given the record presented in this particular case, the Court finds that the ALJ has adequately accounted for Jaenichen's moderate limitations in concentration, persistence, or pace by limiting  her to "simple, routine and repetitive tasks" in the mental RFC. (AR 19). Consequently, the mental RFC assigned by the ALJ is supported by substantial evidence, and Jaenichen's arguments do not warrant a remand of the Commissioner's final decision. *See generally Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough.").

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying disability is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Jaenichen.

SO ORDERED.

Entered this 5th day of June 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge